STATE of North Dakota, Plaintiff and Appellee,

v.

Peter Martin SKARO, Defendant and Appellant.

Cr. No. 900229.

Supreme Court of North Dakota.

Aug. 16, 1991.

Sonja Clapp (argued), Asst. State's Atty., Grand Forks, for plaintiff and appellee.

Robert J. Woods (argued), Forest River, for defendant and appellant.

ERICKSTAD, Chief Justice.

Peter M. Skaro (Skaro) was convicted by a jury of committing gross sexual imposition and was sentenced to the State Penitentiary for a term of ten years. Skaro has appealed from an order denying his motion for a new trial and from an order denying his request for relief under the Uniform Post–Conviction Procedure Act, Chapter 29–32.1, N.D.C.C.[1] We affirm both orders.

Skaro was charged with the crime of gross sexual imposition by "knowingly engaging in sexual contact" with his nine-year old stepdaughter, Ann [a pseudonym],[2] between June and November 1989, in violation of Section 12.1–20–03(2)(a), N.D.C.C. At trial Ann testified in detail about the sexual contacts that occurred between herself and Skaro. She testified that on many occasions Skaro fondled her genitalia with his hands and tongue and that on numerous other occasions he forced her to have vaginal and anal intercourse with him. Ann testified with the use of drawings and pictures and with descriptive terms such as "private spot" to refer to her genitalia. The nature of the sexual abuse forced upon her by Skaro was vividly portrayed by her testimony.

Dr. Jean Fahey, a pediatrician who examined Ann, also testified on behalf of the prosecution. Dr. Fahey testified that her examination revealed that Ann's hymenal ring and anal opening were "abnormal,"

---

1. Skaro was represented by Thomas B. Jelliff throughout the trial proceedings and new trial motion. He was represented by Denise M. Turkula in bringing his application for post-conviction relief. Skaro is represented on this appeal by Robert J. Woods.

2. We have attempted to comply with the objective of Section 12.1–35–03, N.D.C.C., by using pseudonyms for the children involved in this proceeding, while at the same time setting forth the facts so that they may be appropriately weighed and considered.

and consistent with Ann having been the victim of sexual abuse.

Skaro testified that he never sexually abused Ann. Skaro's wife, Susan Skaro, who is Ann's mother, also testified on Skaro's behalf. She testified that Skaro, with whom she and Ann live, was never alone with Ann to have abused her and that she did not believe that Ann's testimony was truthful.

After his conviction, Skaro requested a new trial on the basis of newly discovered evidence that Ann had prior sexual contact with the 13 year-old son of Skaro's sister, Norma Kuck. The trial court denied the motion, and Skaro appealed.

Skaro and Susan left Ann with Norma and her family during December 1987, while they vacationed in Phoenix. Norma learned that her youngest son, John [a pseudonym], age 6, and Ann had sexually experimented when Ann was staying with them, and Norma discussed this with Susan in February 1988. After Skaro's conviction, Norma learned that Ann and Norma's two older sons, James [a pseudonym], age 8, and Robert [a pseudonym], age 13, also had sexual contacts while Ann was staying with them in 1987.

Relying on *State v. Reinart*, 440 N.W.2d 503 (N.D.1989), Skaro asserts that this "newly discovered evidence" would have provided an alternative explanation for Dr. Fahey's conclusion about Ann's physical condition. In *Reinart*, which also involved a charge of sexual contact with a person less than fifteen years old, the trial court, relying on the rape-shield statutes at Sections 12.1–20–14(1) and 12.1–20–15, N.D.C.C., refused to allow Reinart to cross-examine the complainant to elicit testimony that there may have been other persons responsible for the complainant's physical condition. On appeal from the judgment of conviction, we held that when the prosecution introduces medical evidence to establish sexual penetration of the complainant, the defendant should be allowed to provide an alternative explanation of the complainant's physical condition by cross-examining her about prior sexual activity.

A motion for a new trial is committed to the sound discretion of the trial court, whose decision will not be set aside on appeal unless the trial court abused its discretion. *State v. Hegland*, 355 N.W.2d 803 (N.D.1984). A motion for a new trial on the ground of newly discovered evidence will be granted only if all of the following conditions have been met: (1) the evidence must have been discovered after the trial, (2) the failure to learn of the evidence at the time of the trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably produce an acquittal in the event of a retrial. *State v. McLain*, 312 N.W.2d 343 (N.D.1981).

The trial court concluded that the alleged newly discovered evidence was "available" to Skaro at the time of trial, and by inference, further concluded that the failure to discover the evidence at the time of trial was the result of the defendant's lack of diligence.

Norma told Susan in February 1988 that she knew Ann had been sexually experimenting with her youngest son, John. The Skaros also knew prior to the trial that Ann had sexually experimented with Skaro's nieces, and Susan discussed these incidents with Shari Feidler, an employee with the Grand Forks County Social Services child protection unit, in January and February 1990. During these discussions Susan informed Shari that on one occasion Ann inserted a hairbrush in her vagina while another child watched. It is undisputed that the Skaros had knowledge of these incidents prior to trial. Although Skaro and his wife were unaware that Ann had sexual contact with Robert, Norma's oldest son, that information was readily available to them if they had simply questioned Norma and Robert. We agree with the trial court that the failure to discover this evidence was the result of the defendant's lack of diligence.

The trial court also concluded that this evidence of Robert's experimentation with Ann was not of such a nature that it

would have probably produced an acquittal in the event of a retrial. When Norma learned after the trial that Robert and James, as well as John, had engaged in sexual activity with Ann, she informed the Skaros. Skaro's trial attorney then had Norma's three sons evaluated by Dr. Leland H. Lipp, a clinical physiologist, in Grand Forks. In a letter to Skaro's attorney, Dr. Lipp revealed the substance of Robert and James' sexual activity with Ann:

"He [Robert] noted that she [Ann] was staying with their family while her parents were gone. He noted that they had approached each other about sexual activity and he stated that he was 'amazed she knew so much about sex.' He noted that the next night she came in his room, woke him up and asked if they could play around. He consented and they proceeded with some sexual activities. He noted that he laid on her but did not have vaginal penetration with his penis. He did indicate that he inserted his finger into her vagina on several occasions. He noted that this activity has occurred several times, the last time being this past December....

"With regard to [James], he also indicates that starting several years ago, [Ann] had approached him and asked him to go under the bed. He did and they engaged in sexual activity."

This letter and Norma's brief testimony is the only evidence that the trial court had of the specifics of the testimony that Robert and James might give at a retrial. According to Dr. Lipp's letter, Robert and James would testify that Ann knew a lot about sex for her age and that they had been separately approached by Ann to engage in sexual activity. One inference from this testimony could be that Ann's sexual knowledge and curiosity were largely due to Skaro. Thus, this testimony could have been more damaging than helpful to Skaro's defense.

Skaro was charged with having sexual contact with a person under fifteen years old. That crime is committed by "any touching of the sexual or other intimate parts of the person for the purpose of arousing or satisfying sexual or aggressive desires." Section 12.1–20–02(4), N.D.C.C. Penetration is not a required element of the offense. Although there was evidence in this record that Skaro penetrated, or at least attempted to penetrate, Ann's vagina with his penis, there is also evidence of other incidents of Skaro simply touching or caressing Ann's private parts with his hands, mouth, and feet. Ann testified to accounts of these incidents in vivid detail.

Although Robert and James' testimony might have provided an alternative explanation for Ann's physical condition, it is unlikely that it would have produced an acquittal under the facts of this case where penetration was not a necessary element for conviction. Furthermore, there was other evidence, such as Ann's sexual activity with her nieces and evidence of Ann penetrating herself with a hairbrush—evidence that Skaro concededly knew about at the time of trial—that could also have been used to provide an alternative explanation for Ann's physical condition.

Assuming that this evidence of Ann and Robert's sexual activity is newly discovered evidence, we agree with the trial court that it probably would not produce an acquittal in the event of a retrial. Having reviewed the entire record, we conclude that the trial court did not abuse its discretion in denying Skaro's motion for a new trial on the ground of newly discovered evidence.

Skaro also filed an application for post-conviction relief, alleging that he received ineffective assistance of counsel at his trial. The district court entered an order denying his application for relief and Skaro appealed.

■ Effective assistance of counsel is guaranteed to a defendant by the Sixth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment, and by Article I, Section 12, of the North Dakota Constitution. *State v. Thill*, 473 N.W.2d 451 (N.D.1991). The defendant has the burden to prove that he received ineffective assistance of counsel at trial. *State v. McLain*, 403 N.W.2d 16 (N.D.1987). In analyzing a

claim of ineffective assistance of counsel, this court utilizes the test established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *State v. Bowers,* 426 N.W.2d 293 (N.D.1988), we set forth the *Strickland* test:

"First, the defendant must show that his trial counsel's representation 'fell below an objective standard of reasonableness.' 466 U.S. at 688, 104 S.Ct. at 2064. In establishing this objective standard, the defendant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' 466 U.S. at 689, 104 S.Ct. at 2065. Second, the defendant must establish that trial counsel's conduct was prejudicial to him: 'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694, 104 S.Ct. at 2068." *State v. Bowers, supra,* 426 N.W.2d at 295.

Skaro argues that his trial attorney's representation fell below a reasonable standard of competence in two areas: first, Skaro asserts that his trial attorney failed to adequately communicate with him and, secondly, Skaro asserts that his trial attorney failed to contact or interview potential witnesses which may have provided favorable testimony at the trial.

■ At the post-conviction hearing, Skaro's trial attorney testified that prior to the trial he communicated personally in his office with both Skaro and Susan about three or four times and that he saw Susan alone regarding trial matters "almost daily." He also testified that he discussed "many times" with Skaro and Susan what their testimony would be at the trial. However, in denying the motion for post-conviction relief, the district court found that Skaro's trial attorney "failed to maintain adequate communication" with Skaro before the trial, and that this "led to several misunderstandings about trial procedures, strategy and tactics" between Skaro and his attorney. The trial court concluded, neverthe-

less, that trial counsel's failure to adequately communicate did not prejudice Skaro's defense "in light of all the matters of record." We agree that the communication between trial counsel and Skaro did not constitute a model of communication between attorney and client. Trial counsel should have better communicated his trial strategy and methods to address Skaro's concerns about who would and would not be called to testify on his behalf. However, we also agree with the trial court's conclusion that Skaro's trial counsel did not fall below a reasonable standard of representation and that the failings in communication were not so severe as to prejudice the defense of the case or deny Skaro his constitutional right to assistance of counsel.

■ Skaro also asserts that his trial attorney's representation was ineffective because counsel did not contact or interview potential witnesses, having knowledge about Ann's sexual activity with other children, who were brought to counsel's attention on a list of witnesses supplied by Skaro and Susan. Included on the list were Norma and John, and also the names of Skaro's nieces with whom Ann allegedly had sexually experimented.

At the post-conviction hearing, Skaro's trial attorney testified that he did not contact these witnesses because his experience in trying these types of cases, both as a prosecutor and defense attorney, was that prior sexual activity by a child complainant with other young children is not helpful evidence for a defendant charged with sexual abuse of the child. He explained that in his view the testimony of these witnesses could have been used against Skaro to demonstrate that Ann had acquired sexual knowledge and curiosity by the defendant's sexual abuse of her. Trial counsel also believed that if Skaro would have brought out this prior sexual activity by Ann the prosecution would have argued that Ann's sexual experience and willingness to engage in sexual activity presented a temptation that Skaro could not and did not resist. For these trial strategy reasons, trial counsel decided to ignore the alleged incidents

of Ann's other sexual activity and focused his defense, instead, on a theory that Skaro lacked both opportunity and motive to abuse Ann. Consequently, trial counsel relied substantially on Susan's testimony to rebut Ann's story and on Skaro's own testimony that he did not commit any of the alleged wrongful acts.

In *State v. Motsko*, 261 N.W.2d 860, 863 (N.D.1977), Justice Vogel made the following observation which is particularly relevant to our analysis here:

"It is easy for new counsel on appeal (or for an appellate judge, for that matter) to go through a transcript and find matters that could have been explored further, questions that could have been asked but were not, questions that were asked that should not have been asked, objections that could have been made that were not, and witnesses who could have been called but were not or witnesses who would have been better left uncalled. Hindsight is perfect and criticism is easy. But the lawyer engaged in a trial, who has made an investigation of the facts and has talked to the witnesses, may have his own reasons and they may be very good reasons for not asking a question or making an objection or calling a witness. In all fairness, courts must pay some respect to the right and duty of attorneys, whether court-appointed or not, to use judgment in the heat of a trial, and we must have some doubts about the accuracy of second-guesses later on."

Thus, we should scrutinize trial counsel's conduct with a great deal of deference and consciously attempt to limit the distorting effect of hindsight. *State v. McLain*, 403 N.W.2d 16 (N.D.1987).

In *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305, 318–319 (1986), the United States Supreme Court stated that the essence of an ineffective assistance claim is "that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." In analyzing a defendant's ineffective assist-

ance claim under the first element of the *Strickland* test, we apply the presumption that counsel's conduct was reasonable, and the burden is on the defendant to prove that the representation provided by his attorney "fell below an objective standard of reasonableness." *State v. McLain*, 403 N.W.2d 16, 18 (N.D.1987).

If we permitted ourselves to use perfect hindsight, we might conclude that trial counsel's defense strategy was weak and not particularly believable. We might also speculate that if he had interviewed and called to testify persons knowing about Ann's other sexual activity the jury might have believed that Ann's physical condition was caused by Ann's other sexual encounters and not by Skaro. All of this, of course, is nothing more than second-guessing and speculation.

The trial court, in denying post-conviction relief, found:

"[The trial counsel's] performance as the Defendant's counsel during trial in presenting a viable defense, in calling the witnesses he deemed necessary to support that defense, in examining and cross-examining witnesses, and in insuring that all of the Defendant's constitutional guarantees were protected, was not deficient."

We apply the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P., when we review a trial court's fact findings on an appeal from a judgment or order under the Uniform Post–Conviction Procedure Act. *Jensen v. State*, 373 N.W.2d 894 (N.D.1985). However, the Supreme Court of the United States has declared that "[i]neffectiveness [of counsel] ... is a mixed question of law and fact" and, further, that "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland v. Washington, supra,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700.

"[T]here is substantial authority that [mixed questions of law and fact] are not protected by the 'clearly erroneous' rule and are freely reviewable." 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil,* § 2589, p. 753 (1971). How-

ever, as the Supreme Court of the United States has noted:

"There is substantial authority in the Circuits on both sides of this question.... There is also support in decisions of this Court for the proposition that conclusions on mixed questions of law and fact are independently reviewable by an appellate court." (Citations omitted.)

*Pullman–Standard v. Swint*, 456 U.S. 273, 289–290, 102 S.Ct. 1781, 1790–1791 n. 19, 72 L.Ed.2d 66, 80 (1982). We have said, without analysis, in a case unrelated to the issues in this case, but where we held a matter to be a mixed question of fact and law, that the question was "fully reviewable by this court without the strictures imposed by Rule 52(a), NDRCivP." *Earth Builders, Inc. v. State*, 325 N.W.2d 258, 259 (N.D.1982).

We need not decide in this case how much, if any, deference to accord to a trial court's finding on a mixed question of law and fact. Regardless of what standard we apply to the trial court's finding that trial counsel's performance "was not deficient," we reach the same conclusion in this case. We do not believe that trial counsel's representation was so deficient that it upset the adversarial balance between prosecution and defense or resulted in an unfair trial and a suspect verdict. We agree with the trial court that Skaro's trial counsel presented a viable defense and provided constitutionally effective representation for him. Skaro has failed to meet his burden to show that trial counsel's representation fell below the constitutionally required level of competence.

In his appeal, Skaro invited this court to abandon the second prong of the *Strickland* analysis which requires the defendant to demonstrate that trial counsel's deficient performance prejudiced the defense. Having concluded that Skaro has failed to prove the first prong of the *Strickland* analysis that defense counsel's performance was deficient, it is unnecessary for us to discuss the second prong of the analysis. *See State v. McLain*, 403 N.W.2d 16, 18 (if we can dispose of a case by addressing only one element of the *Strickland* test it is unnecessary to address both elements).

In accordance with this opinion, the orders of the trial court denying the motion for new trial and denying the request for post-conviction relief are affirmed.

VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

I join the majority decision except for its dicta on the probability of acquittal. I agree that the trial court was not arbitrary, unreasonable or capricious in concluding that the allegedly newly discovered evidence was "available" to Skaro at the time of the trial and that the failure, if any, to discover that evidence was the result of Skaro's lack of diligence. I, therefore, concur in the majority's conclusion that the trial court did not abuse its discretion in denying the motion for a new trial. Because the majority's analysis of the issue of whether the "new" evidence would have probably produced an acquittal is not necessary to the decision, I do not join in that portion of the opinion.