Leo Daniel STOPPLEWORTH,
Petitioner and Appellant,

v.

STATE of North Dakota, Respondent
and Appellee.

Civ. Nos. 920035, 930051.

Supreme Court of North Dakota.

June 16, 1993.

Leo Daniel Stoppleworth, pro se.

J.E. Rick Brown, Asst. State's Atty., Grand Forks, for respondent and appellee; submitted on brief.

NEUMANN, Justice.

Leo Daniel Stoppleworth appeals from the order of the District Court for Grand Forks County denying his application for post-conviction relief. We affirm.

Stoppleworth was convicted of the class A felony of gross sexual imposition [1] by a jury in the District Court for Grand Forks County. His conviction was affirmed by this Court in *State v. Stoppleworth,* 442 N.W.2d 415 (N.D.1989). Subsequent to that opinion, Stoppleworth initiated an application for post-conviction relief in the district court. The application alleged two grounds: (1) ineffective assistance of counsel; and (2) newly discovered evidence. Following a hearing, the district court denied the application, and this timely appeal followed. Because we view the district court's memorandum decision and order denying the application for post-conviction relief to be a thoroughly adequate explanation and interpretation of the law and issues involved, we will attempt to keep our discourse brief, and direct Stoppleworth to refer to that document.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Stoppleworth has designated numerous areas in which he believes the conduct of his trial attorney [2] was deficient, entitling him to a reversal of his conviction. A defendant is guaranteed effective assistance of counsel by both the Federal and North Dakota Constitutions. U.S. Const. amend. VI and XIV; N.D. Const. art. I, § 12. When a defendant raises an ineffective-assistance-of-counsel argument, it is the defendant's burden to prove that counsel's assistance was ineffective at trial. *State v. Skaro,* 474 N.W.2d 711, 714 (N.D. 1991). In carrying that burden, the defendant must establish two elements. "First, the defendant must prove that the counsel's performance was deficient. Second, the defendant must prove that the deficient performance prejudiced the defendant." *State v. Wilson,* 488 N.W.2d 618, 622 (N.D. 1992) [citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]. In attempting to prove the first

element, "the defendant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Skaro,* 474 N.W.2d at 715 (quoting *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065). The second element requires the defendant to prove that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068). *See also State v. Bowers,* 426 N.W.2d 293, 295 (N.D. 1988); *State v. Thompson,* 359 N.W.2d 374, 377 (N.D.1985).

■ Stoppleworth's first area of contention concerns jury instructions and a plea bargain agreement. He claims that the attorney failed to advise him of the availability of jury instructions on lesser-included offenses. He also accuses the attorney of neglecting to relay information to him regarding a plea bargain agreement offered by the State. The district court found both arguments unpersuasive. It noted that the attorney testified that he informed Stoppleworth of the instructions on lesser-included offenses and of the plea bargain agreement. The attorney's law partner also testified that Stoppleworth and the attorney discussed instructions on lesser-included offenses in the partner's presence. Although a claim of ineffective assistance of counsel is a mixed question of law and fact which is fully reviewable on appeal, *State v. Skaro,* 474 N.W.2d at 716–17, we still tender some recognition to the factual findings of the district court. It is in a better position to judge the credibility and demeanor of the witnesses. After reviewing the record, we are also convinced that Stoppleworth was advised of the instructions and the plea bargain agreement. We are persuaded not only by the attorney's testimony and the testimony of the attorney's law partner, but also by the

---

**1.** Gross sexual imposition, which requires a "sexual act," is defined in Section 12.1–20–03, N.D.C.C.

**2.** Stoppleworth's trial attorney was Alan J. Larivee. His appellate counsel for his first appeal to this Court was Irvin B. Nodland. The attorney

representing him during the hearing on his post-conviction relief application was William Kirschner. On this appeal he is representing himself. During the course of this appeal, the only attorney whose conduct we will be reviewing is that of the trial attorney, Larivee.

testimony of Stoppleworth and his wife, and by the substance of various correspondence sent by Stoppleworth to the attorney following the conviction. In addition, we must proceed with the strong presumption that the attorney was competent. Such factors lead us to conclude that Stoppleworth had knowledge of the availability of the instructions and the plea bargain agreement.

We believe several of Stoppleworth's deficiency claims can be combined into one area of contention involving witnesses. Stoppleworth asserts that the attorney should have called character witnesses on his behalf at trial because the crux of the case hinged on his word against the victim's (Karen). He also faults the attorney for not cross-examining Karen about her previous testimony at her ex-husband's rape trial, contradicting her testimony that she had not testified before in a trial of this kind. Additionally, Stoppleworth believes that the attorney was deficient in not drawing to the jury's attention the similarities between Karen's testimony at his trial and the testimony of the victim in Karen's ex-husband's rape trial, suggesting that Karen fabricated her testimony.

 All of the above accusations involve trial strategy and tactics by the attorney, and we have stated that "[i]t is for trial counsel and not appellate courts to determine trial strategy and tactics." *State v. Wilson*, 488 N.W.2d at 622. The attorney gave coherent and rational reasons for proceeding the way he did at trial, and explained with clarity why he believed the above evidence was best left undisclosed. We will not second-guess the trial strategy and tactics of the attorney. *Id.* Instead, we follow our cautious directive in *Skaro*, where we said:

> "In *State v. Motsko*, 261 N.W.2d 860, 863 (N.D.1977), Justice Vogel made the following observation which is particularly relevant to our analysis here:
>
> 'It is easy for new counsel on appeal (or for an appellate judge, for that matter) to go through a transcript and find matters that could have been explored further, questions that could

have been asked but were not, questions that were asked that should not have been asked, objections that could have been made that were not, and witnesses who could have been called but were not or witnesses who would have been better left uncalled. Hindsight is perfect and criticism is easy. But the lawyer engaged in a trial, who has made an investigation of the facts and has talked to the witnesses, may have his own reasons and they may be very good reasons for not asking a question or making an objection or calling a witness. · In all fairness, courts must pay some respect to the right and duty of attorneys, whether court-appointed or not, to use judgment in the heat of a trial, and we must have some doubts about the accuracy of second-guesses later on.'

> "Thus, we should scrutinize trial counsel's conduct with a great deal of deference and consciously attempt to limit the distorting effect of hindsight."

*State v. Skaro*, 474 N.W.2d at 716. Under this standard, we do not believe that the attorney's conduct regarding witnesses was deficient.

 The last area in which Stoppleworth claims the attorney was ineffective is the testing of a pair of panty hose. The panty hose were entered into evidence in Stoppleworth's trial. One of the feet had been severed from a leg, and it was the State's contention that Stoppleworth had severed the foot while he was forcefully pulling the panty hose off of Karen. Stoppleworth, through the attorney, countered that assertion by arguing that Karen had cut the foot off, fabricating the evidence and her story of the rape. A test was conducted on the panty hose to determine if the foot had been cut off or torn off, and that test was inconclusive. Stoppleworth now contends that the attorney was deficient for not testing the panty hose further to prove that they were cut. During oral argument to this Court, Stoppleworth offered a testing site which he believes would render a conclusive test.

We answer this contention by quoting the attorney's response to the inquiry about the panty hose testing.

"Q. You have also—it's been alleged that you have failed to investigate the evidence of panty hose prior to trial, such evidence as studies have been submitted to the Court. What is your response?

"A. That's not true. I personally bought a number of pairs of panty hose to see if they could be taken and torn the way that they were.

"Secondly, I tried to find if there was anyone in documentation that could test panty hose. I could find no one could, at least none that I felt would meet the requirements of the *Frye* test of a test of scientifically accepted procedures.

"It's my understanding now, in looking at the documentation, that Mr. Stoppleworth's attorney sought some people who taught in the textile department and they did some tests on panty hose. To me, what I read, this still would not be admissible in court because there's no scientific nature of what was happening [ ] in this case.

"Also, it was very difficult to reconstruct the situation that was happening in the car at the time. No matter who you believe, whether you believe Mr. Stoppleworth or Miss Hendrickson, she says he tore off the panty hose, he says she took them off. This was all done in the front seat of a car. How you would recreate that situation to properly test the panty hose I don't know.

"The other factor in this case was we were able to stand in front of the jury and show them these panty hose and ask them how this could happen, how could she have had the panty hose come off the way she said they did, that he pulled them off and there was no tears, just one foot missing, and I thought that that was probably more of an impact on the jury than anything else and at that point we had no expert available anyway."

It is evident from the above testimony that there were strategic and tactical considerations in the attorney's decisions regarding the panty hose. As we stated above, it is not for us to second-guess the attorney as to what would have been the better approach during trial. One test had already been conducted and it came back inconclusive. The attorney did the best he could under the circumstances; we will not engage in a game of "what if."

Thus, we conclude that Stoppleworth has failed to prove that the attorney's conduct was deficient. Having failed to prove the first prong of the *Strickland* test, we need not consider the second. *See State v. Skaro*, 474 N.W.2d at 717; *State v. Thompson*, 359 N.W.2d at 377.

## II. NEWLY DISCOVERED EVIDENCE

Stoppleworth also appeals to this Court because he believes that the district court erred in refusing to grant his motion for a new trial based on newly discovered evidence. A motion for a new trial brought by a defendant is addressed to the discretion of the trial court. *State v. Skaro*, 474 N.W.2d at 713; *State v. Thompson*, 359 N.W.2d at 380. Its decision to deny such a motion will not be disturbed on appeal absent an abuse of that discretion. *Id.* A motion for a new trial on the basis of newly discovered evidence should be granted only if the following four requirements are satisfied: "(1) the evidence must have been discovered after the trial, (2) the failure to learn of the evidence at the time of the trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably produce an acquittal in the event of a retrial." *Id.*

Stoppleworth argues that a new trial should be granted in his case because the white, powdery substance found on Karen on the night in question, which did not test positively to be cocaine before the trial, did test positively to be cocaine following the trial. We disagree because Stoppleworth's argument does not satisfy the third and fourth requirements listed above. At the hearing on the application, Stoppleworth introduced expert testimony that cocaine can increase an individual's

sexual drive. However, that same expert testified that the effects of cocaine lasted only up to one hour, and that after nine hours the effect of the drug on one's system would be virtually nonexistent. During the trial, Karen testified that she had ingested cocaine nine hours before the incident. Faced with these facts, the district court concluded:

> "Given the witnesses['] testimony, the apparently low quality of cocaine ingested, and the potential for prejudice, it is possible that the Court would not have allowed the cocaine to be introduced into evidence under Rule 403 North Dakota Rules of Evidence. In any case, even if allowed into evidence the minimal effects the drug would have on the complainant nine hours later could not be termed as 'material'. Furthermore, if material, the evidence would not support the probability of producing an acquittal at a new trial. Based on these grounds, the 'newly discovered evidence' clearly fails the third and fourth requirements as set out in the *Thompson* case."

We agree with the district court that Stoppleworth has failed to satisfy the third and fourth requirements. Therefore, there was no abuse of discretion in denying his motion for a new trial based on newly discovered evidence.

For the foregoing reasons, we affirm the order of the District Court for Grand Forks County denying Stoppleworth's application for post-conviction relief.

VANDE WALLE, C.J., and LEVINE, SANDSTROM and MESCHKE, JJ., concur.