STATE of North Dakota, Plaintiff and Appellee,

v.

Donald S. DALMAN, Defendant and Appellant.

STATE of North Dakota, Plaintiff and Appellee,

v.

Paulette DALMAN, Defendant and Appellant.

Cr. Nos. 940034, 940035.

Supreme Court of North Dakota.

Aug. 24, 1994.

Robin L. Olson (argued), Nelson Law Office, Fargo, for defendants and appellants.

Robert Allan Freed, Asst. State's Atty. (argued), Jamestown, for plaintiff and appellee.

NEUMANN, Justice.

Donald and Paulette Dalman, husband and wife, seeking post-conviction relief, appeal from the district court orders denying their motions to withdraw their pleas of guilty. We dismiss Donald's appeal, and affirm the district court order denying Paulette's motion to withdraw her guilty plea.

Donald and Paulette Dalman, Canadian citizens, were charged with six counts of class B felony security violations on February 27, 1992. Originally, both Donald and Paulette were represented by the same court-appointed attorney. In mid-March 1992, they each retained the same private attorney. On May 5, 1992, a plea hearing was held in district court. N.D.R.Crim.P. Rule 11. The Dalmans agreed to plead guilty to two counts of class C felony theft. The securities violations complaints were dismissed. The Dalmans were given deferred impositions of sentence for a period of three years.

On November 12, 1993, the Dalmans moved that their guilty pleas be withdrawn and their convictions vacated. They argued ineffective assistance of counsel and noncompliance with Rule 11, N.D.R.Crim.P. A hearing was held on December 20, 1993, at which Paulette testified for both herself and her husband. The district court denied the motions. It is from these orders the Dalmans appeal. Both cases have been consolidated for purposes of appeal.

## DONALD

■ Donald died in April of 1994, after filing this appeal, but before this decision. Arguing the appeal is moot, the State moves to dismiss Donald's appeal. Donald's attorney resists this motion on the ground that dismissal would violate Donald's due process rights. He argues that Donald has the right to withdraw his guilty plea in order to clear his name and memory. We disagree.

■ This is not a direct appeal from a conviction; the time for such an appeal passed long ago. This is an appeal from an order upon an application for post-conviction relief. We do not give advisory opinions. *E.g., Gosbee v. Bendish et al.,* 512 N.W.2d 450 (N.D.1994). Appeals are dismissed if the issues become moot or academic, such that no actual controversy is left to be determined. *Id.* In this case, the death of the appellant moots this appeal.[1] *Jackson v. State,* 559 So.2d 320 (Fla.App.1990); *see generally* Annotation, Comment Note—When Criminal Case Becomes Moot so as to Preclude Review of or Attack on Conviction or Sentence, 9 ALR3d 462, 496–97 (1966 & Supp.) (majority of states hold that death of accused moots appeal); *but see State v. Witkowski,* 163 Wis.2d 985, 473 N.W.2d 512 (Ct. App.1991) (upholding *State v. McDonald,* 144 Wis.2d 531, 424 N.W.2d 411 (1988), taking minority position that right to appeal survives death of defendant who dies while pursuing post-conviction relief). We dismiss his appeal.

## PAULETTE

On appeal, Paulette argues the district court erred in not granting her motion to withdraw her guilty plea. She bases this contention on three factors: (1) that the sentencing court failed to inform her of the possibility of being deported, (2) that her attorneys failed to inform her of possible conflicts of interest that might arise due to joint representation, and (3) that her attorneys also failed to inform her of the possibility of being deported. She argues the result was a manifest injustice.

■ "The court shall allow the defendant to withdraw a plea of guilty whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice." N.D.R.Crim.P. Rule 32(d)(1); *e.g., State v. Trieb,* 516 N.W.2d 287 (N.D.1994). Withdrawal motions are timely if made with due diligence considering the nature of the allegations being made.[2] Rule 32(d)(2). "The determination of whether or not there has been a manifest injustice supporting withdrawal of a guilty plea lies within the trial court's discretion and will not be reversed on appeal except for an abuse of discretion." *Trieb,* 516 N.W.2d at 290 (quoting *State v. Zeno,* 490 N.W.2d 711, 713 (N.D.1992)). An abuse of discretion occurs under this rule when the court's legal discretion is not exercised in the interest of justice. *E.g., Trieb,* 516 N.W.2d at 290–91. In this case, such an abuse has not occurred.

### I

■ Paulette argues the sentencing court did not comply with Rule 11 of the North Dakota Rules of Criminal Procedure. She argues Rule 11 required the sentencing court to inform her that deportation was a possible consequence of pleading guilty, and that this noncompliance resulted in an involuntary plea. Although failure to comply with Rule 11 may result in a manifest injustice justifying withdrawal of a guilty plea, *e.g. State v. Boushee,* 459 N.W.2d 552 (N.D.1990), Rule 11 does not require this deportation notification. We are not convinced the district court abused its discretion in refusing to grant Paulette's motion on these grounds.

■ The sentencing court did not inform Paulette that she could be deported from the United States because of this criminal conviction. Rule 11 requires the sentencing court to inform the defendant of the "mandatory minimum punishment, if any, and the maxi-

---

1. We note that Rule 43, N.D.R.App.P., permitting substitution of a personal representative for a deceased party, has no application in the context of post-conviction relief that is otherwise moot.

2. The State argues in the alternative that Paulette's motion was not timely. Affirming the district court's denial of the motion, we do not address this argument.

mum possible punishment provided by the statute defining the offense to which the plea is offered." Rule 11(b)(2). The court adequately informed Paulette of the maximum penalty that could be imposed for violation of NDCC § 12.1–23–02. *See* NDCC § 12.1–32–01 (maximum penalty for class C felony is five years of imprisonment, a five thousand dollar fine, or both). There was no mandatory minimum. Deportation was a collateral consequence of the plea.[3] Defendants need not be informed of all collateral consequences of guilty pleas. We join the prevailing trend of states that have held sentencing courts need not inform defendants of the collateral consequence of deportation in order for pleas to be voluntary. *Tafoya v. State*, 500 P.2d 247 (Alaska 1972); *Alpizar v. United States*, 595 A.2d 991 (D.C.1991) (under prior law); *State v. Hasnan*, 806 S.W.2d 54 (Mo.Ct.App. 1991), *reh'g denied; State v. Chung*, 210 N.J.Super. 427, 510 A.2d 72 (1986); *People v. Williams*, 189 A.D.2d 910, 592 N.Y.S.2d 471 (1993), *appeal denied; State v. Malik*, 37 Wash.App. 414, 680 P.2d 770 (1984); *State v. Baeza*, 174 Wis.2d 118, 496 N.W.2d 233 (Ct. App.1993); *Carson v. State*, 755 P.2d 242 (Wyo.1988).

## II

■ Paulette asserts two areas in which she believes the conduct of her attorneys was so deficient as to warrant withdrawal of her guilty plea.[4] First, she argues that the alleged failure of her privately retained attorney to inform her of the possibility of deportation proceedings if she plead guilty was ineffective assistance of counsel leading to a manifest injustice warranting withdrawal of her plea. Second, she argues that the alleged failure of her attorneys to inform her of possible conflicts of interest that could arise from having the same attorney represent both her and Donald resulted in a manifest injustice warranting withdrawal of her plea.

3. Although the record does not contain any proof that Paulette is presently involved in deportation proceedings, we will proceed as if this had been established.

4. "A defendant is guaranteed effective assistance of counsel by both the Federal and North Dakota Constitutions. U.S. Const. amend. VI and XIV;

■ Paulette has the burden of proving that her counsel's assistance was ineffective. *E.g., Stoppleworth v. State*, 501 N.W.2d 325, 327 (N.D.1993). Her burden is two-fold; first, she must prove her counsel's performance was deficient, and second, she must prove that the deficient performance prejudiced her. *E.g., id.* There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *E.g., id.* Paulette fails to meet her burden of proof for both allegations of ineffective assistance of counsel. The district court did not abuse its discretion in denying Paulette's motion.

## A

In *State v. Stai*, 335 N.W.2d 798, 801 (N.D. 1983), we said that "a defendant may not withdraw a guilty plea entered in reliance on h[er] counsel's 'bad advice' when the advice given is within the range of competence required of attorneys representing defendants in criminal cases." The district court found that Paulette failed to produce any evidence "which would indicate that [her] counsel provided ineffective assistance to [her] in negotiating [her] plea[ ] of guilty." She relies on the bare assertion that she should have been informed of the possibility of deportation.

This is the first time this court has addressed the issue of whether attorneys have a duty to inform defendants about possible deportation consequences of guilty pleas. We therefore rely on the substantial body of case law from other states addressing this issue.[5] For example, the Iowa Supreme court reasoned "that failure to advise a defendant concerning collateral consequences, even serious ones, cannot provide a basis for a claim of ineffective assistance of counsel." *Mott v. State*, 407 N.W.2d 581, 583 (Iowa 1987). *See also Oyekoya v. State*, 558 So.2d 990 (Ala.Crim.App.1989), *cert. denied* (counsel's failure to advise defendant of collateral

N.D. Const. art. I, § 12." *Stoppleworth v. State*, 501 N.W.2d 325, 327 (N.D.1993).

5. We distinguish this situation from those where counsel has taken affirmative steps to misrepresent the state of the law.

consequences, such as deportation, is not ineffective assistance of counsel); *Tafoya v. State,* 500 P.2d 247 (Alaska 1972), *cert. denied* (failure of counsel to inform defendant of possible collateral consequence of deportation did not rise to level of ineffective assistance of counsel); *State v. Casseus,* 513 So.2d 1045 (Fla.1987) (counsel's failure to advise client of collateral consequence of deportation did not constitute ineffective assistance of counsel); *State v. Chung,* 210 N.J.Super. 427, 510 A.2d 72 (1986) (counsel did not render inefficient assistance of counsel by failing to inform defendant of possible collateral consequence of deportation); *People v. Dor,* 132 Misc.2d 568, 505 N.Y.S.2d 317 (N.Y.App.Div.1986) (failure to discuss collateral consequence of deportation did not rise to ineffective assistance of counsel); *Commonwealth v. Frometa,* 520 Pa. 552, 555 A.2d 92 (1989) (counsel not required to advise defendant of collateral consequences of pleading guilty); *State v. Malik,* 37 Wash. App. 414, 680 P.2d 770, 772 (1984), *reh'g denied* ("The possibility of deportation, being collateral, was not properly a concern of appointed counsel."). There are numerous collateral and remote consequences of pleading guilty. We do not require defense counsel to inform clients of every conceivable nuance of pleading guilty.

### B

■ Paulette also argues ineffective assistance of counsel resulted because of her attorney's alleged failure to inform her of possible conflicts of interest that might arise due to joint representation of her and her husband Donald. She fails in her attempt to establish deficiency, and she fails to establish prejudice.

Paulette bases her argument on the Minnesota Supreme Court case, *State v. Olsen,* 258 N.W.2d 898 (Minn.1977). In *Olsen,* the Minnesota court held:

> "The defendant must voluntarily and with full knowledge of the consequences decide on dual representation. The court should address each defendant personally and advise him of the potential danger of dual representation. The defendant should have an opportunity and be at liberty to

question the trial court on the nature and consequences of dual representation and the entire procedure should be placed on the record for review. When satisfactory inquiry does not appear on the record, the burden shifts to the state to demonstrate beyond a reasonable doubt that prejudicial conflict of interests did not exist."

*Id.* at 907–08 (footnotes omitted).

We addressed this issue once before in *State v. Rougemont,* 340 N.W.2d 47, 48 (N.D. 1983). In *Rougemont,* we refused to follow the Minnesota court. *Id.*

> "The procedure prescribed by the Minnesota Supreme Court is similar to Rule 44(c) of the Federal Rules of Criminal Procedure. Both procedures are designed to prevent potential conflicts arising from 'the possibility of inconsistent pleas, factually inconsistent alibis, conflicts in testimony, differences in degree of involvement in the crime, tactical admission of evidence, the calling and cross-examination and impeachment of witnesses, or strategy in final summation.' *Olsen,* 258 N.W.2d at 905. See also Rule 44(c), F.R.Crim.P., explanatory note.

> "This court has not adopted the language of Rule 44(c), F.R.Crim.P. See Minutes of N.D. Joint Procedure Committee, October 15–16, 1981. Furthermore, in the present case, none of the potential problems arising from dual representation occurred."

*Id.* We find ourselves in the same situation here. Paulette has failed to even suggest any way in which she might have been prejudiced or harmed due to joint representation. To the contrary, on this appeal, she has proceeded in concert with Donald throughout. Although they retained separate counsel on appeal, both attorneys are from the same law firm, and Paulette and Donald filed identical documents with the court. A single brief was submitted on appeal, and both Paulette and Donald argued that they were innocent of the crime to which they originally pleaded guilty. Under these circumstances we are not convinced that Paulette received ineffective assistance of counsel.

We dismiss Donald's appeal, and affirm the order of the district court denying Paulette's request to withdraw her guilty plea.

VANDE WALLE, C.J., and SANDSTROM and MESCHKE, JJ., concur.

LEVINE, Justice, concurring specially.

I agree that Donald Dalman's death moots this appeal from a postconviction order denying Dalman's motion to withdraw his guilty plea. But the majority does not discuss the issue of abatement of the prosecution. I write specially to air the law as it relates to abatement of all proceedings in direct appeals from convictions.

All the federal circuits and the majority of states hold that death, during appellate review of a criminal conviction, abates not only the direct appeal, but all proceedings from the inception of the prosecution, including the judgment of conviction. *E.g., Durham v. United States,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971) (overruling on other grounds, *Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (eliminating *Durham* rule for petitions of certiorari, but not for appeals of right)); *Crooker v. United States,* 325 F.2d 318 (8th Cir.1963); *United States v. Asset,* 990 F.2d 208 (5th Cir.1993); *United States v. Davis,* 953 F.2d 1482 (10th Cir.1992); *United States v. Schumann,* 861 F.2d 1234 (11th Cir.1988); *United States v. Mollica,* 849 F.2d 723 (2d Cir.1988); *United States v. Bechtel,* 547 F.2d 1379 (9th Cir.1977); *Comm. v. De La Zerda,* 416 Mass. 247, 619 N.E.2d 617 (1993); *State v. Griffin,* 121 Ariz. 538, 592 P.2d 372 (1979); *State v. Gomes,* 57 Haw. 271, 554 P.2d 235 (1976); *State v. Carter,* 299 A.2d 891 (Me.1973); *see* Annot., Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction—Modern Cases, 80 A.L.R.4th 189, 192–95 (1990).

One rationale for death abating the conviction is that the state's interest in protecting society has been satisfied and its interest in punishing the wrongdoer made impossible. *E.g., State v. Griffin, supra* 592 P.2d at 373. While some states hear and decide direct appeals of dead criminal defendants, *e.g., Commonwealth v. Walker,* 447 Pa. 146, 288

A.2d 741 (1972), and a few dismiss or abate the appeal but let the judgment stand, *e.g., Whitehouse v. State,* 266 Ind. 527, 364 N.E.2d 1015 (1977); *Vargas v. State,* 659 S.W.2d 422 (Tex.Crim.App.1983), I believe the best approach is the one taken by the federal courts and the majority of state courts, because when an appeal has been taken from a conviction, and death has deprived the accused of her right to appellate review, the defendant should not stand convicted without resolution of her appeal. *See, e.g., United States v. Moehlenkamp,* 557 F.2d 126 (7th Cir.1977). After all, "an appeal is an integral part of [our] system for finally adjudicating [her] guilt or innocence." *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956).

Black's Law Dictionary 261 (6th ed. 1990) says that "collateral" means "[a]dditional or auxiliary; supplementary." It follows, then, that a "collateral" appeal is one taken in a postconviction proceeding where there has been a prior appeal or the opportunity for a prior appeal.

The question is whether Dalman's appeal should be treated as a direct appeal from a conviction and the judgment vacated and the case remanded with directions to dismiss, or as a "collateral" appeal, which other jurisdictions dismiss, but do not abate the entire prosecution. *See Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1971) (dismissing petition for certiorari but leaving the judgment unabated); *Keeny v. State,* 575 S.W.2d 850 (Mo.Ct.App.1978) (abating appeal from order denying withdrawal of guilty plea but not abating conviction). Because a defendant applying for certiorari, who dies thereafter, has had the benefit of an appeal of right, there is no need to vindicate her rights by providing more appellate review. *Moehlenkamp, supra* at 128. Dalman could have appealed from his guilty plea [*see* Rule 11(a)(2), NDRCrimP], but did not. So he has not had the benefit of any appellate review. But, I am not persuaded that his waiver of that right should convert what is plainly a collateral appeal into a direct appeal. Therefore, I conclude that his conviction should not

be abated and I concur in the majority opinion.