Filed 3/21/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 44

Gerald Lee DeCoteau, Petitioner and Appellant

v.

State of North Dakota, Respondent and Appellee

No. 990238

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Benny A. Graff, Judge.

AFFIRMED.

Opinion of the Court by Neumann, Justice.

Rodney K. Feldner, P.O. Box 146, Mandan, N.D. 58554, for petitioner and appellant.

Brian D. Grosinger, Assistant State’s Attorney, 210 2nd Avenue NW, Mandan, N.D. 58554, for respondent and appellee.

DeCoteau v. State

No. 990238

Neumann, Justice.

[¶1] Gerald Lee DeCoteau appeals from the trial court’s judgment denying his post-

conviction relief petition alleging ineffective assistance of counsel.  We affirm.

[¶2] In 1996, DeCoteau was convicted of gross sexual imposition.  After this Court summarily affirmed the conviction in 
State v. DeCoteau
, 1997 ND 121, 569 N.W.2d 288, DeCoteau petitioned for post-conviction relief, seeking a new trial.  The trial court denied the petition without an evidentiary hearing.  DeCoteau appealed.  This Court remanded for further proceedings.  
DeCoteau v. State
, 1998 ND 199, ¶ 13, 586 N.W.2d 156. 

[¶3] On remand, the trial court held an evidentiary hearing.  DeCoteau called  Marsha Strecker, who has an intermittent personal relationship and children with DeCoteau, as a witness.  Strecker testified she would have provided trial testimony suggesting victim consent.  Strecker said she would have asserted the victim drank alcohol and watched a pornographic film with DeCoteau, voluntarily went for a ride with DeCoteau, and informed Strecker she would have sexual intercourse with DeCoteau and satisfy him sexually if Strecker could not.  Strecker stated she had met with DeCoteau’s trial counsel, Marvin Hager, before trial and Hager assured her she would testify at trial.  Before trial, Strecker allegedly attempted to call Hager twice concerning her proposed testimony, but Hager did not return her calls.  

[¶4] DeCoteau also testified at the evidentiary hearing.  DeCoteau asserted he always expected Strecker to testify at trial, her testimony would have saved him from conviction, and his attorney double-crossed him by not calling her.  

[¶5] After attempting to assert the attorney-client privilege, Hager testified at the evidentiary hearing.  Hager presented his pre-trial notes as evidence of conversations with DeCoteau about calling Strecker as a trial witness.  The notes showed DeCoteau agreed to try to elicit testimony relating to victim consent from other witnesses.  This strategy was chosen because Strecker had secured a domestic violence protection order against DeCoteau in at least two counties, and two outstanding criminal complaints were pending against DeCoteau in which Strecker was the complaining witness.  Hager testified he reminded DeCoteau of the strategy on the morning of trial, but also informed DeCoteau that subpoenas could still be issued and Strecker’s testimony obtained.  Hager said DeCoteau again agreed not to call Strecker and to continue with the strategy of eliciting victim consent evidence through other witnesses.  Hager also denied Strecker attempted to call his office, offering office records as evidence, and pointed out DeCoteau did not attend their trial preparation appointment only days before trial.  

[¶6] DeCoteau attempted to rebut Hager’s testimony.  According to DeCoteau, on the morning of trial, Hager initially told him Strecker would be there shortly, only later informing him Strecker would not be called to testify.  DeCoteau claimed he then asked Hager to request a continuance, but Hager told him it would be unavailable.  As supporting evidence, DeCoteau presented a letter from Phyllis Wilcox, who wrote she had observed DeCoteau repeatedly asking Hager about a witness named Marsha on the morning of trial.  

[¶7] After the evidentiary hearing, the trial court again denied the post-conviction relief petition, specifically denying DeCoteau’s ineffective assistance of counsel claim.  The trial court found Hager was credible, and DeCoteau and Strecker were not credible.  The court also found that Hager, by cross-examination of other witnesses at trial, had raised most of the facts Strecker would have testified to.  DeCoteau appeals, alleging ineffective assistance of counsel.  

[¶8] In 
Lange v. State
, we explained the 
Strickland
 test for ineffective assistance of counsel.  522 N.W.2d 179, 181 (N.D. 1994).  Lange, like DeCoteau, appealed from a denial of post-conviction relief based on a claim of ineffective assistance of counsel.  
Id.
 

In order to establish his claim of ineffective assistance of counsel, defendant's burden was twofold.  First, he needed to prove that his counsel's performance was defective.  
State v. McLain
, 403 N.W.2d 16 (N.D. 1987);  
Strickland v. Washington
, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Second, he needed to show that his defense was prejudiced by the proven defects.  
Id.
   [The defendant] has not met this heavy burden.

Analysis of the first element of the 
Strickland
 test, whether counsel's performance was deficient, requires consideration of all circumstances to determine whether there were "errors so serious" that defendant was not accorded that "counsel" guaranteed by the Sixth Amendment.  
McLain
, 403 N.W.2d at 17;  
Strickland,
 466 U.S. at 687, 104 S.Ct. at 2064.   Effectiveness of counsel is measured by an "objective standard of reasonableness" considering "prevailing professional norms."  
Strickland
, 466 U.S. at 688, 104 S.Ct. at 2065.   A great deal of deference is accorded trial counsel.  
Id.
 at 689, 104 S.Ct. at 2065;  
State v. Motsko
, 261 N.W.2d 860 (N.D. 1977).  Courts presume counsel's conduct to be reasonable and consciously attempt "to limit 'the distorting effect of hindsight.' "  
McLain
, 403 N.W.2d at 18 [citing 
State v. Thompson
, 359 N.W.2d 374, 377 (N.D. 1985) ];  
see also
 
Strickland,
 466 U.S. at 689, 104 S.Ct. at 2065.

This court will not disturb a trial court's findings of fact in a post-conviction hearing unless they are "clearly erroneous."  
Schwindt v. State,
 510 N.W.2d 114 (N.D. 1994).  Decisions regarding ineffective assistance of counsel entail mixed questions of fact and law.  
State v. Skaro
, 474 N.W.2d 711 (N.D. 1991) [citing 
Strickland v. Washington
, 466 U.S. at 698, 104 S.Ct. at 2070].  Our analysis proceeds with recognition that the district court "is in a better position to judge the credibility and demeanor of the witnesses."  
Stoppleworth v. State
, 501 N.W.2d 325, 327 (N.D. 1993).

Lange
, at 181.

[¶9] The trial court had the opportunity to judge the credibility and demeanor of the witnesses.  After observing the witnesses, the trial court found Hager was credible, and DeCoteau and Strecker were not.  The court also found that during cross-

examination of other trial witnesses, Hager had elicited most of the facts Strecker would have testified to.  

[¶10] Under Rule 52(a), N.D.R.Civ.P., a trial court's findings of fact in a post-conviction relief action will not be disturbed unless clearly erroneous.  
Breding v. State
, 1998 ND 170, ¶ 4, 584 N.W.2d 493.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made.  
Burlington Northern and Sante Fe Railway Co. v. Burlington Resources Oil & Gas Co.
, 1999 ND 39, ¶ 10, 590 N.W.2d 433.  

[¶11] Here, the trial court’s findings are supported by evidence.  At the evidentiary hearing, Hager offered office records disproving Strecker’s claim that she twice called before trial, and presented pre-trial notes documenting DeCoteau’s agreement to the trial strategy of eliciting Strecker’s proposed testimony through other witnesses.  DeCoteau relied on a letter from Phyllis Wilcox to bolster his evidence.  The letter stated DeCoteau “repeatedly had asked about his wittnesses [sic] and had [Hager] contacted Marcia.”   However, this letter does not contradict Hager’s evidence.  Hager concedes DeCoteau asked about Strecker’s possible testimony the morning of trial, but again agreed not to call Strecker as a witness after being reminded of the strategy he had agreed to earlier.  The trial court found Hager’s testimony and evidence credible.  We do not second-guess the trial court on its credibility determinations.  
Zimmerman v. Minot Public School Dist. No. 1
, 1998 ND 14, ¶ 19, 574 N.W.2d 797.  [¶12] The trial court also pointed out Hager elicited testimony establishing the victim brought a pornographic movie to the premises, drank, wrestled with and acted in a sexual manner toward DeCoteau.  Hager brought those facts to the jury’s attention during cross-examination of the investigating officer.  By arguing Strecker should have been called to testify to those facts, DeCoteau is now simply attacking the agreed-upon trial strategy.  As we held in 
Stoppleworth v. State
:

"[I]t is for trial counsel and not appellate courts to determine trial strategy and tactics."  
State v. Wilson
, 488 N.W.2d [618, 622 (N.D. 1992)].  The attorney gave coherent and rational reasons for proceeding the way he did at trial . . . . We will not second-guess the trial strategy and tactics of the attorney.  
Id.
  Instead, we follow our cautious directive in 
Skaro
, where we said: 

"In 
State v. Motsko
, 261 N.W.2d 860, 863 (N.D. 1977), Justice Vogel made the following observation which is particularly relevant to our analysis here: 

'It is easy for new counsel on appeal (or for an appellate judge, for that matter) to go through a transcript and find matters that could have been explored further, questions that could have been asked but were not, questions that were asked that should not have been asked, objections that could have been made that were not, and witnesses who could have been called but were not or witnesses who would have been better left uncalled. Hindsight is perfect and criticism is easy. But the lawyer engaged in a trial, who has made an investigation of the facts and has talked to the witnesses, may have his own reasons and they may be very good reasons for not asking a question or making an objection or calling a witness.  In all fairness, courts must pay some respect to the right and duty of attorneys, whether court-appointed or not, to use judgment in the heat of a trial, and we must have some doubts about the accuracy of second-guesses later on.' 

Thus, we should scrutinize trial counsel's conduct with a great deal of deference and consciously attempt to limit the distorting effect of hindsight."  

State v. Skaro
, 474 N.W.2d at 716. Under this standard, we do not believe that the attorney's conduct regarding witnesses was deficient.

Stoppleworth v. State
, 501 N.W.2d 325, 328 (N.D. 1993).

[¶13] We affirm the trial court’s findings because they were supported by the evidence, and we are not left with a definite and firm conviction a mistake has been made.  
See
 
Burlington Northern
, at ¶ 10.  Because we affirm the trial court’s findings, the first prong of the 
Strickland
 test, defective performance, has not been met.  An unsuccessful trial strategy does not make defense counsel's performance defective, and we will not second-guess counsel's defense strategy through the distorting effects of hindsight.  
Breding
, at ¶ 9. 

[¶14] The trial court's judgment denying the petition for post-conviction relief is affirmed.

[¶15] William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.