**Mary JACOBS, Appellee,**

v.

**Raymond JACOBS, Appellant.**

**No. 56023.**

Supreme Court of Iowa.

March 27, 1974.

Gerard J. Glaza, Cedar Rapids, for appellant.

John B. Reilly, Linn County Legal Aid, Cedar Rapids, for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

These parties, Raymond and Mary Jacobs, were married in 1966. In 1967 they adopted a son, Jeffrey, born June 30, 1966. No children were born as issue of this marriage.

On June 2, 1970, Mary obtained a divorce from Raymond and was awarded custody of the child.

On April 21, 1972, Raymond filed application to modify the decree, requesting the court to award custody of Jeffrey to him. The district court denied the application. Raymond appeals and we affirm.

Prior to hearing, on application of counsel for both parties, the court ordered a home study report from the Linn County Department of Social Services. This report was stipulated into evidence. It was supplemented by the testimony of the caseworker, a person whose observations indicated a capacity for insight and mature judgment.

Jeffrey is described by the caseworker, his teacher, and friends of his mother as a very happy, outgoing child. In 1971 his teacher and the school principal suggested to Mary that she have Jeffrey tested by the school psychologist because he had difficulty in being quiet long enough to learn. The test indicated the child might be hyperactive. He was thereafter diagnosed by a Cedar Rapids doctor as having a hyperkinetic behavioral syndrome without evidence of cerebral disfunctioning. The doctor prescribed Ritalin, a tranquilizer-type drug. Hyperkinetic children have limited attention spans and are over-active. They often present disciplinary problems if the condition is not controlled. Jeffrey had been having behavioral and academic problems in kindergarten but after he started taking the medication he improved and was promoted into first grade.

Jeffrey's teacher reported he was courteous, had been taught to share, and was clean and neat at all times. His principal

was of the opinion it might be detrimental to Jeffrey to change schools as he had only recently become adjusted to the one he was attending. The school personnel reported Mary was a very cooperative and concerned parent, and had followed through well with suggestions made regarding Jeffrey.

Mary is 26 years old. According to the report she is bright and alert, had a happy childhood, and apparently maintains a close relationship with her family. She was graduated from a Cedar Rapids high school, then attended a nurse's aid training program in Iowa City. She dropped out of the program because of a pregnancy, and gave up the child for adoption. Later Mary married Raymond. She held various jobs and took much responsibility for the service station she and Raymond operated toward the latter part of their marriage.

After her divorce, Mary lived with another man in her home. He is the father of her two younger children, Debbey, age 15 months, and Rodney, age four months. This man moved to California. Mary testified she would not let him come back in the home.

In November 1971 Mary was arrested for drunkenness. While being booked she was found to have in her possession a controlled substance, amphetamine. She entered a guilty plea to a controlled substance charge, and was sentenced to be imprisoned for six months in the county jail. Sentence was suspended during good behavior for a period not exceeding six months.

The caseworker who visited Mary's home characterized it as warm and happy, although not well kept. She was of the opinion Mary had a "great deal of affection for her children" which was evident in the way the older children responded to her. The children appeared clean, neatly dressed and well-cared for.

Mary receives $248 per month in aid for dependent children payments, and $100 per month in child support from Raymond. She rents a two bedroom home from her parents for $90 per month. Apparently she has no savings; on the other hand, she has no indebtedness.

Raymond is thirty-one years old and a high school graduate. He had several jobs and an unfortunate experience operating a service station before he secured his present employment as a mechanic. His work hours are 2:00 P.M. to 10:00 P.M. but he has every other weekend off. Raymond remarried one wife and has had two other wives, a total of three wives and four marriages. At time of hearing he was married to Linda Hammond who is ten years younger than he. She is intelligent and more articulate than Raymond. Linda formulated a written rebuttal to the caseworker's report. This response was stipulated into evidence.

Raymond and Linda are paying for a small, nice home in a good neighborhood. The house is neat and well-kept. Linda augments the family income with outside employment. They owe approximately $1250 on their home down-payment, car and refrigerator.

For the first year after the divorce Raymond displayed little interest in Jeffrey. After his remarriage his interest heightened. The caseworker concluded Raymond and Jeffrey had a "positive" relationship and that Raymond had a "great deal of affection for his son."

I. The scope of review in this appeal is de novo. Rule 334, Rules of Civil Procedure. Of course, in determining custody, the controlling consideration is the best interests of the child. Rule 344(f)(15), R.C. P.

II. Raymond apparently grounds his appeal on his claim Mary is morally unfit to have custody of their son. Questionable morals as well as other factors to be considered in determining custody have been explored in recent decisions and need not be discussed again here. In re Marriage

of Dawson, 214 N.W.2d 131 (Iowa 1974); In re Marriage of Callahan, 214 N.W.2d 133 (Iowa 1974).

We neither approve nor condone those episodes in Mary's life which reflect on her character and judgment. Certainly she has used up a lifetime's quota of mistakes. But we must note when this application came before trial court for hearing her liaison with the father of the other two children in Mary's home had ended without any evidence it might be reinstituted.

Neither do we ignore Mary's testimony concerning certain deplorable facets of Raymond's character and life-style which stand in the record without rebuttal.

Other factors must weigh in the balance. There is a great deal of hostility between Raymond and his new wife Linda, and Mary. Both Linda and Raymond expressed the opinion they would prefer Jeffrey not be allowed to visit his mother if they obtained custody. This hostility, if custody is changed, might well create serious problems. Clearly, it places little importance on Jeffrey's conceded love for his mother.

An even more unfortunate situation exists in Raymond and Linda's attitude toward Jeffrey's hyperkinetic syndrome. They question whether this condition exists, but if it does, they believe it results from Jeffrey's environment. They also indicate Mary's only purpose in giving Jeffrey medication is to keep him tranquilized so she would not be "hassled." Raymond and Linda's failure to properly evaluate this condition is potentially disastrous.

The above and other factors caused the caseworker to recommend that custody remain unchanged, even though she recognized there were problems or potential problems with respect to each home.

It is also apparent that if Raymond obtains Jeffrey's custody and secures the sleep he may need following his night-shift employment, he will be able to spend time with his son only on every other weekend. The record indicates he now has such opportunity by visitation, and in the meantime Jeffrey has the benefit of a full-time mother.

Trial court had the opportunity to observe the parties, listen to them and watch them in person. Although we are not bound by trial court's findings, in a case such as this we give them weight. In re Marriage of Callahan, supra, 214 N.W.2d at 136; In re Marriage of Williams, 199 N.W.2d 339, 346 (Iowa 1972).

We are further guided by our rule that ordinarily the status of children should be quickly fixed and, thereafter, little disturbed. Miller v. Miller, 202 N.W.2d 105, 112 (Iowa 1972); Eddards v. Suhr, 193 N.W.2d 113, 117 (Iowa 1971).

While the issue before us is extremely close, there is no evidence Jeffrey has suffered damage from Mary's mistakes. He is happy, well-adjusted, adequately cared for, and loved by both his adopted parents. Neither custodial alternative presented by this appeal is without risk to his well being. Trial court rightly cautioned Mary any further self-inflicted problems would ultimately affect her son's welfare and endanger her continued custody. Taking into consideration the caseworker's recommendation, the holding below, and the complete record, we affirm trial court's judgment.

Affirmed.