**ROLETTE EDUCATION ASSOCIATION, Plaintiff and Appellant,**

**v.**

**ROLETTE PUBLIC SCHOOL DISTRICT NO. 29, a public corporation, Defendant and Appellee.**

**Civ. No. 880024.**

Supreme Court of North Dakota.

Aug. 16, 1988.

MESCHKE, Justice.

The Rolette Education Association [REA] appealed from a judgment denying declaratory and injunctive relief against the Rolette Public School District No. 29 [School District]. We hold that the appeal is moot, and accordingly, we dismiss the appeal.

REA represents Rolette teachers under Chapter 15–38.1, N.D.C.C. Part of their 1985 negotiated agreement with the School District said:

"FRINGE BENEFITS

"A single health insurance policy or an equal amount in an annuity through Horace Mann Insurance Companies will be paid by the school board. *Any change of*

---

carriers must be approved by both the board [School District] and the REA. "The District will provide a single coverage Income Protection Plan." [Emphasis added].

During the 1985–86 school year Blue Cross/Blue Shield was their health insurer. REA and the School District agreed to North Dakota Educator's Insurance Trust (NDEIT) as their health insurer for the 1986–87 school year. In September 1987, for the first time and without approval of REA, the School District advertised for bids for health insurance for all of its employees. Bids were received from Blue Cross/Blue Shield and NDEIT. Blue Cross/Blue Shield had the lowest bid. REA acknowledged that both bidders were "responsible bidders," but did not approve a change. The School District changed insurers and accepted the Blue Cross/Blue Shield bid.

REA sued the School District, claiming that unilateral change of health insurers breached their negotiated agreement. The trial court concluded that Section 15–47–15, N.D.C.C.,[1] required bids for health insurance contracts and that that statutory obligation could not be subverted by an agreement between teachers and a school district authorized by Chapter 15–38.1, N.D.C.C. The trial court further concluded that, because bids were statutorily required for health insurance, the part of the agreement requiring approval of REA to change carri-

ers was void and unenforceable. REA appealed the judgment denying relief, contending that subsection 1 of § 15–47–15, N.D.C.C., on "personal services of employees," excepts health insurance coverage from bidding requirements.

At oral argument, counsel for REA commendably informed us that, without his knowledge, REA and the School District had recently ratified a new negotiated agreement without the earlier-quoted clause on fringe benefits. The related part of the new negotiated agreement says:

"7. Fringe Benefits

    \*    \*    \*    \*    \*    \*

"c. In recognition that insurance contracts (presumably) fall under the public bidding law and that carriers will be ascribed in accordance to the law, it is imperative to guarantee that the policyholder(s) are provided adequate and responsible coverage. Adequate and responsible coverage would mandate that all bid specifications meet the approval of the Board and REA."

Because the new agreement does not include the clause requiring mutual approval of a change of insurance carriers that was the subject of this lawsuit and appeal, counsel for REA reluctantly moved to dismiss this appeal as moot. Counsel for the School District opposed the motion, asserting that the issue involved great public

---

1. Section 15–47–15, N.D.C.C., says:

*School contracts—Advertisement for bids—Publication—Exceptions—Penalty.* No contract involving the expenditure of an aggregate amount greater than eight thousand dollars, except as hereinafter set forth, shall be entered into by any school district of any kind or class except upon sealed proposals and to the lowest responsible bidder after ten days' notice by at least one publication in a legal newspaper published in the county in which the school district, or a portion thereof, is located. If no newspaper is published in such county, the publication shall be made in a newspaper published in an adjacent county. The provisions of this section shall not apply to any of the following classes of contracts:

"1. For personal services of employees of the district.

"2. For school text or reference books.

"3. For any article which is not for sale on the open market.

"4. For any patented, copyrighted, or exclusively sold device or feature required to match articles already in use.

"5. For any patented, copyrighted, or exclusively sold article of so distinctive a nature that only one make of the article can be purchased.

"6. Any building contract.

"7. For school transportation services or fuel for vehicles the purchase of which is made by direct negotiation with a contractor in accordance with section 15–34.2–07.1.

"8. For heating fuel which is purchased under a directly negotiated contract provided the procedure described in section 15–34.2–07.1 for transportation and vehicle fuel is followed.

"Such exceptions shall be strictly construed. Every member of a school board who participates in a violation of this section shall be guilty of a class B misdemeanor."

interest and was capable of repetition, yet evading review.

In *State v. Liberty National Bank and Trust Co.*, 427 N.W.2d 307, 308 (N.D.1988), we recently observed that we "will not dismiss an appeal as moot where the matter in controversy is one of great public interest and involves the authority and power of public officials, or where the matter is ' "capable of repetition, yet evading review." ' "

In *Forum Publishing Co. v. City of Fargo*, 391 N.W.2d 169, 170 (N.D.1986), we reiterated a definition of "public interest":

" ' "We understand 'public interest' to mean more than mere curiosity; it means something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected. It does not mean anything so narrow as the interest of the particular localities which may be affected by the matter in question." ' "

In *Forum Publishing Co., supra*, the trial court held that applications for police chief for the city of Fargo were subject to the open-records law even in the hands of a third-party consulting firm. After stays pending appeal were denied, the documents were released to the public. We concluded that the appeal was not moot because the case dealt with the right of the public to be informed, a matter of great public interest, and because the case also dealt with the authority and power of public bodies in hiring public officials.

Similarly, in *Liberty National Bank, supra*, we held that an appeal was not moot. The issue was whether a three-year holding period for divestiture of land by a bank under § 10–06–13, N.D.C.C., was preempted by federal law. The Bank sold the land while the appeal was pending. We concluded that the enforcement of the corporate farming laws by the State itself was a matter of great public interest.

In contrast, in *St. Onge v. Elkin*, 376 N.W.2d 41 (N.D.1985), we held that an appeal was moot where the appeal was about whether gas rates should be calculated on the cost of purchased gas on a company-wide basis and where a stipulation and order subsequent to the lower court decision had resulted in rates calculated on that basis. We concluded that, although the issue might arise again, it did not have such great public interest that its resolution was necessary. Because the relief sought had been granted, we felt that an opinion would have been purely advisory with little or no benefit to the parties or the public.

This case is distinguishable from *Liberty National Bank, supra*, and *Forum Publishing Co., supra*. No important State government interest is implicated by this single clause in a local school district contract with its teachers. Absent such a limiting clause, there can be no dispute about whether a school district can bid an insurance contract; it is surely free to do so, whether it is legally mandated by Section 15–47–15, N.D.C.C., or not.

Without an agreement requiring approval by REA to change health insurance carriers, there is no controversy in this case. If there are like clauses in other agreements between teachers' association and school districts, no dispute about them is before us. Whatever guidance an opinion here might offer for other teachers' associations and school districts in future negotiations about fringe benefits would be purely advisory. *See St. Onge, supra*. We conclude that this is not a matter of such great public interest that it demands our attention even without an existing agreement and absent an actual controversy.

Moreover, we do not believe this issue is capable of repetition in a manner that will evade review. In both *Forum Publishing Co., supra*, and *Liberty National Bank, supra*, "the length of time required for a case to work its way through the trial and appellate court processes" made those issues especially evasive. *Liberty National Bank, supra*, at 308. In this case, the parties themselves, by a new agreement, and not because of time alone, made this case moot. *Wahpeton Public School District No. 37 v. North Dakota Education Association*, 166 N.W.2d 389 (N.D.1969).

The difficult time factors in *Forum Publishing Co., supra,* and *Liberty National Bank, supra,* are not present here.

We conclude that this appeal is moot. Accordingly, it is dismissed.

ERICKSTAD, C.J., and LEVINE

VANDE WALLE and GIERKE, JJ., concur.