**John J. GOSBEE, Plaintiff and Appellant,**

v.

**Richard BENDISH, Morton County Commissioner, in his official capacity, Paul E. Trauger, Morton County Auditor, in his official capacity, and Morton County, a corporate body politic, Defendants and Appellees.**

**Civ. No. 930230.**

Supreme Court of North Dakota.

Feb. 23, 1994.

451

John J. Gosbee (argued), Gosbee Law Firm, Mandan, for plaintiff and appellant.

Randall J. Bakke (argued), Smith, Horner & Bakke, Bismarck, for defendants and appellees.

NEUMANN, Justice.

This is an appeal from a judgment rendering a verdict for the defendants. The action was dismissed on its merits, and defendants were awarded their costs and disbursements in the amount of $173.75. The district court concluded that the document which plaintiff sought access to was not a public record, and therefore it was not subject to NDCC § 44–04–18. Determining that this appeal is moot, we dismiss.

John J. Gosbee sought access to a document two Morton County officials had in their possession. The document in question was a draft of a lease that was still in preliminary rough draft form. A Bismarck attorney had drafted the lease for the owners of some land in Morton County that was tentatively going to be used for a ski resort. The two officials in question were Richard Bendish, Morton County Commissioner, and Paul E. Trauger, Morton County Auditor. Both the officials and the county denied Gosbee access to the lease, so Gosbee brought a declaratory judgment action in district court. The specific relief requested in the complaint was to inspect the lease, and to be awarded costs and expenses. After filing, but before trial, Gosbee made an uncontested motion requesting that a copy of the lease in the trial court's possession be released to him. That motion was granted and complied with. At trial, the trial court ruled that the issue was not moot, and made the following conclusions of law:

"1. That the plaintiff has failed to prove that the draft lease involved was a public record subject to NDCC § 44–04–18.

"2. That to allow plaintiff to obtain the draft lease would discourage open discourse and inquiry regarding economic development.

"3. While the draft lease may have contained the seeds of a potential public record, it did not germinate into one.

"4. That the draft lease was not a public record, and requiring its production or inspection by plaintiff, would destroy or hinder the seeds of economic development before they had a chance to blossom."

On appeal Gosbee presents two issues for review. First, whether there is a "germinating seed" exception to the North Dakota public records law; second, whether the North Dakota Rules of Professional Conduct forbid pro se attorneys from testifying in their own cases. The specific relief requested is reversal of the trial court's judgment, and a remand of the case to the trial court in order that Gosbee may enter an appropriate certification of costs at trial and on appeal.

 Before we reach the issues raised by Gosbee, we need to address whether we will exercise jurisdiction to consider this appeal. Of particular concern is the fact that Gosbee has already received a copy of the lease. Our law is well established that courts cannot give advisory opinions, and appeals will be dismissed if the issues become moot or academic, such that no actual controversy is left to be determined. *Walker v. Schneider*, 477 N.W.2d 167, 169 (N.D.1991); *Backes v. Byron*, 443 N.W.2d 621, 623 (N.D.1989); *Williams v. State*, 405 N.W.2d 615, 620 (N.D. 1987); *Forum Publishing Co. v. City of Fargo*, 391 N.W.2d 169, 170 (N.D.1986); *St. Onge v. Elkin*, 376 N.W.2d 41, 43 (N.D.1985); *Gasser v. Dorgan*, 261 N.W.2d 386, 389 (N.D. 1977); *Peoples State Bank of Velva v. State Bank of Towner*, 258 N.W.2d 144, 145 (N.D. 1977); *Wiederanders v. Wiederanders*, 187 N.W.2d 74, 78 (N.D.1971); *Wahpeton Pub. Sch. Dist. No. 37 v. North Dakota Educ. Ass'n*, 166 N.W.2d 389, 393 (N.D.1969), reh'g denied; *State ex rel. Schafer v. Gussner et al.*, 92 N.W.2d 65, 66 (N.D.1958); *Hart v. Bye*, 86 N.W.2d 635, 637 (N.D.1957), reh'g denied; *Brace v. Steele County*, 77 N.D. 276, 42 N.W.2d 672, 676 (1950), reh'g denied.

 The fact that this was brought as a declaratory judgment proceeding does not eliminate the question of mootness. Although the purpose of declaratory judgment relief is to provide a method for parties to a justiciable controversy to settle uncertainties about rights, status, and other legal relations, NDCC ch. 32–23; e.g., *In re McMullen*, 470 N.W.2d 196 (N.D.1991), ordinarily the action must involve an actual controversy, *West Fargo Pub. Sch. Dist. No. 6 of Cass County v. West Fargo Educ. Ass'n*, 259 N.W.2d 612, 617 (N.D.1977); *Allen v. City of Minot*, 363

N.W.2d 553, 554 n. 1 (N.D.1985); *but cf. Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property & Casualty Co.,* 452 N.W.2d 319 (N.D.1990) (settlement by original parties did not moot issue of ultimate liability for coverage and defense among insurance companies). "No action or proceedings lie under a declaratory judgment Act to obtain a decision which is merely advisory or which merely determines abstract questions." *West Fargo Pub. Sch. Dist. No. 6 of Cass County,* 259 N.W.2d at 617.

■ One way an appeal can become moot is the occurrence of events that result in the court's inability to render effective relief. *E.g., Gasser,* 261 N.W.2d at 386 (subpoena duces tecum complied with). Because Gosbee has been provided with a copy of the lease, we are unable to render effective relief. His request for declaratory judgment is without merit because it would be advisory. The fact that the trial court decided a moot case does not require us to do the same. *State ex rel. Schafer v. Gussner et al.,* 114 N.W.2d 707 (N.D.1962).

■ However, even when technically moot, we will address issues when they are of great public interest and involve the authority and power of public officials, *e.g., State v. Liberty Nat'l Bank and Trust Co.,* 427 N.W.2d 307, 308 (N.D.1988), or when the matter is "capable of repetition, yet evading review," *e.g. Forum Publishing Co.,* 391 N.W.2d at 170 (quoting *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976)). As used in this context, "public interest" means

> "'more than mere curiosity; it means something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected. It does

not mean anything so narrow as the interest of the particular localities which may be affected by the matter in question.'"

*Forum Publishing Co.,* 391 N.W.2d at 170, *citing to Hart,* 86 N.W.2d at 637 (quoting *State ex rel. Freeling v. Lyon,* 63 Okla. 285, 165 P. 419, 420 (1917)). There is not sufficient public interest at stake in this case to warrant our review.

■ The lease Gosbee originally sought from Bendish and Trauger does not rise to the level of public importance necessary to merit our review. Gosbee argues the controversy over proposed county funding of the ski resort in the form of MIDA bonds raises the lease to a matter of public importance. Although Gosbee's reasons for seeking the lease include curiosity,[1] and the issue of funding would only affect the locality of Morton County, funding of the proposed ski resort could conceivably have a pecuniary impact on taxpayers in the county. However, there are weaknesses in Gosbee's MIDA bond argument. Before MIDA bonds can be issued, there must be public notice and a hearing. NDCC § 40–57–04; *see also* NDCC § 40–57–19 (election required before general obligation bonds issued). It is relevant that the lease was tentative in the respect that it was neither signed nor dated, it had no effective beginning or termination dates, it contained numerous markings and handwritten notes, and much of the important information was left blank. There is no evidence to suggest that notice and hearing were imminent at the time of Gosbee's request.

The insufficiency of public importance determination is bolstered even further by the existence of a statute that exempts certain economic development records from disclosure under our open records law. NDCC § 44–04–18.2(1).[2] The legislature has decid-

---

1. In his appellate brief, Gosbee argues that refusal to allow access to the lease should be evidence there was something to hide.

2. "*44–04–18.2. Certain economic development records exempt from disclosure.*
 1. The following economic development records and information are not public records subject to section 44–04–18 and section 6 of article XI of the Constitution of North Dakota:
 a. Records and information pertaining to a prospective location of a business or industry,

including the identity, nature, and location of the business or industry, when no previous public disclosure has been made by the business or industry of the interest or intent of the business or industry to locate in, relocate within, or expand within this state. This exemption does not include records pertaining to the application for permits or licenses necessary to do business or to expand business operations within this state, except as otherwise provided by law.

ed that in certain situations the importance of economic development overrides the public's right of access to sensitive information relating to private businesses. *Id.*

 Although this issue of defining a public record may arise in the future, that alone does not empower us to render a purely advisory opinion. *Rolette Educ. Ass'n v. Rolette Pub. Sch. Dist. No. 29,* 427 N.W.2d 812, 814 (N.D.1988); *St. Onge,* 376 N.W.2d at 43; *Peoples State Bank of Velva,* 258 N.W.2d at 146. We do not perceive this to be an issue that inherently evades review. The facts of this case are distinguishable from those cases in which we determined meaningful review was evaded. *See e.g., Walker,* 477 N.W.2d at 167 (significant public interest, and time constraints of preliminary hearing and State's belief it may issue a new complaint instead of seeking review of magistrate's adverse ruling made issue of double jeopardy capable of repetition in a manner that evaded review); *North Dakota Council of Sch. Adm'rs v. Sinner,* 458 N.W.2d 280 (N.D.1990) (issues of great public concern, and inherent nature of appropriation and allotment process virtually assured repetition without meaningful opportunity for review); *Forum Publishing Co.,* 391 N.W.2d at 169 (great public interest, and undesirable results of further appeals). Although possible, the likelihood of an identical set of circumstances occurring in the future is not great, and the nature of this subject matter does not inherently evade review.

For the above stated reasons, we dismiss this appeal.

VANDE WALLE, C.J., and LEVINE and MESCHKE, JJ., concur.

SANDSTROM, Justice, concurring in result.

I concur in the result. The issue is moot because Mr. Gosbee has received the document. The issue involved is not of great public interest. The statute that appears to control, N.D.C.C. § 44-04-18.2, was not ar-

gued to or considered by the trial court—a situation not likely to recur.

b. Trade secrets and commercial or financial information received from a person, business, or industry that is interested in or is applying for or receiving financing or technical assistance, or other forms of business assistance."