1997 ND 207

**Anthony SPOSATO, Plaintiff and Appellee,**

v.

**Robin SPOSATO, Defendant and Appellant.**

**Civil No. 970067.**

Supreme Court of North Dakota.

Nov. 6, 1997.

Maureen F. White Eagle of Foughty, Christianson, White Eagle & Berg, Devils Lake, for defendant and appellant.

Todd A. Schwarz and John W. Frith of Frith, Schwarz & Steffan, Devils Lake, for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1] Robin Sposato appeals from the district court's order allowing grandparent visitation in the State of New York under NDCC § 14–09–05.1. Determining the issue is moot, we dismiss the appeal.

[¶ 2] Robin and Thomas Sposato were divorced in 1994, with Robin receiving custody of their two daughters, Elizabeth, born June 18, 1988, and Mary, born September 23, 1989. Thomas is currently allowed eight hours of supervised visitation every two weeks. The court required supervised visitation because, during the divorce proceeding, it had found Thomas had committed emotional and sexual abuse against the children.

[¶ 3] Anthony Sposato is the paternal grandfather of the two girls. In May 1995,

Anthony requested grandparent visitation. Anthony had no previous relationship with the girls, except for attending their baptisms, which he did not recall attending. In fact, he did not recall ever seeing the children before. The district court ordered visitation in Devils Lake. Anthony exercised visitation in Devils Lake in April 1996. He spent approximately four hours with the girls, going out for breakfast, attending Mass, and visiting at the motel swimming pool. Other than the visit in Devils Lake, the children have not had contact with Anthony and only know their grandfather through pictures.

[¶ 4] In November 1996, Anthony moved for overnight extended visitation, requesting the girls visit him and his family in New York from December 28, 1996, to January 3, 1997. Anthony made reservations and proposed to pay for the airline tickets. He also made accommodations for the girls to stay with him. Anthony is 69 years of age and in good health, but recent surgeries make travel difficult for him. Anthony also agreed to make arrangements for someone to fly with the girls if Thomas was not allowed to accompany them on the trip.

[¶ 5] Robin opposed the visitation for a multitude of reasons including: (1) Anthony had not consulted the girls about the visitation; (2) the girls had never flown before and were apprehensive about flying; (3) the girls barely knew their grandfather, and did not know the other relatives he proposed they meet; and, (4) the girls have never slept overnight with anyone other than their maternal grandparents, not even friends. Robin also raised concerns about the possibility of the girls being left unsupervised with Thomas. In addition, a therapist at Lake Region Human Service Center who has worked with the girls for four years stated she did not feel it is in the children's best interest to travel across the country to visit complete strangers.

[¶ 6] A hearing was held on the visitation. Assertions at oral argument on appeal suggest that before issuing its order, the trial court had ex parte communications with counsel for both parties. The trial court granted Anthony's motion and ordered the children visit him in New York from December 28, 1996, through January 3, 1997. The trial court also ordered Robin to travel with the children and stay in New York, without hearing her possible objections, if any, on the record.

[¶ 7] The visitation did not take place due to logistical problems with the airline tickets. The only grandparent visitation the court ordered was for the period from December 28, 1996, through January 3, 1997. Robin did not appeal until February 20, 1997; she argues future grandparent visitation in New York should not be allowed.

[¶ 8] Before addressing Robin's argument, we need to decide whether we will exercise jurisdiction to consider this appeal. This Court has often held we cannot render advisory opinions, and we will dismiss appeals if the issues become moot or so academic that no actual controversy is left to be determined. *See, e.g. In re Estate of Zimmerman*, 1997 ND 58, ¶ 6, 561 N.W.2d 642; *Bies v. Obregon*, 1997 ND 18, ¶ 9, 558 N.W.2d 855; *Ashley Educ. Ass'n v. Ashley Pub. Sch. Dist.*, 556 N.W.2d 666, 668 (N.D. 1996); *Gosbee v. Bendish*, 512 N.W.2d 450, 452 (N.D.1994); *Bjornson v. Guar. Nat'l Ins. Co.*, 510 N.W.2d 622, 624 (N.D.1994). The prohibition of advisory opinions requires there be an "actual controversy to be determined" before a court can properly adjudicate. *Bies*, 1997 ND 18, ¶ 9, 558 N.W.2d 855 (citing *State ex rel. Sprynczynatyk v. Mills*, 523 N.W.2d 537, 544 (N.D.1994)). When the occurrence of related events makes it impossible for a court to render effective relief, or when the issue has been mooted by lapse of time, no "actual controversy" exists. *Id.; see also Backes v. Byron*, 443 N.W.2d 621, 623 (N.D.1989).

[¶ 9] "This court will determine a moot issue, rather than dismiss the appeal, only if the controversy is one of great public interest and involves the authority and power of public officials or if the matter is capable of repetition, yet evading review." *Ashley Educ. Ass'n*, 556 N.W.2d at 668. For an issue to be of public interest it must affect the rights or interests of the public at large or have statewide ramifications. *Bland v. Commission on Medical Competency*, 557

N.W.2d 379, 381 (N.D.1996). While grandparent visitation rights in general are of public interest and may even raise constitutional issues of parental rights,[1] this particular order has no statewide implications. It only affected the parties involved and questions of constitutionality were not raised at the trial court nor adequately raised on appeal.

[¶ 10] The issue Robin has raised is moot. This is an appeal from an order granting grandparent visitation for a specific time period that has expired. Robin did not appeal the visitation order until nearly two months after the period for visitation had passed. The issue has been mooted by a lapse of time. Because the order expired before the appeal, no "actual controversy" exists.

[¶ 11] Neither Robin nor Anthony has offered any plausible public policy reasons why this Court should entertain the appeal. This case does not involve such interests as would justify our consideration of a moot issue, nor does it involve an issue likely to be repeated without a meaningful opportunity for judicial review. Although the issue of grandparent visitation may arise again in the future, that alone does not empower us to render a purely advisory opinion. *Gosbee,* 512 N.W.2d at 454; *Rolette Educ. Ass'n v. Rolette Pub. Sch. Dist.,* 427 N.W.2d 812, 814 (N.D.1988); *St. Onge v. Elkin,* 376 N.W.2d 41, 43 (N.D.1985). If the district court orders out-of-state visitation in the future, Robin is entitled to timely appeal and may file for stay under Rule 8, NDRAppP, and Rule 62, NDRCivP.

[¶ 12] No request for future grandparent visitation has been filed with the trial court. Therefore, issues raised in a possible future order are not ripe for review. "An issue is not ripe for review if it depends on future contingencies which, although they might occur, necessarily may not, thus making addressing the question premature." *Bies,* 1997 ND 18, ¶ 9, 558 N.W.2d 855. Addressing an issue involving mootness or ripeness would be the equivalent of rendering a purely advisory opinion. *Id.* at ¶ 10, 558 N.W.2d 855. This Court is not empowered to render

a purely advisory opinion merely because the issue may arise in the future. *Id.*

[¶ 13] We do not know whether Anthony Sposato will request grandparent visitation in New York in the future. Even if this occurs, we do not know whether the trial court will grant his request. Because the expired order is moot and future visitation has not been requested or considered by the trial court, the issue is not ripe for appeal. We are unwilling to render a purely advisory opinion.

[¶ 14] The appeal is dismissed.

[¶ 15] VANDE WALLE, C.J., and SANDSTROM J., concur.

MESCHKE, Justice, dissenting.

[¶ 16] Because I believe this case is not moot, and I would reverse this order forcing grandparent visitation, I respectfully dissent.

[¶ 17] Additional background is useful to understand this case. Before he ever had any real contact with these grandchildren, and without asking to visit them, Anthony Sposato sued for visitation with them on May 12, 1995. His petition was consolidated with a then-pending motion by the children's father, Anthony's son Thomas, to supersede the supervised visitation imposed because Thomas had emotionally and sexually abused these children. Those motions resulted in a September 19, 1995 order that continued restricted and supervised visitation with the children's father, and also directed: "When the minor children's grandfather is exercising any visitation with the minor children and the [father] is present, this visitation must also be supervised by a third-party."

[¶ 18] Anthony thereafter visited his two grandchildren in their hometown of Devils Lake once in April 1996 for a few hours. Again without asking, Anthony moved in May 1996 to force the grandchildren to come to his home in Pelham, New York, for a visit of nearly a week over the 1997 New Year's holiday.

[¶ 19] After a hearing, the trial court's December 24, 1996 order compelled "over-

---

1. *See Peterson v. Peterson,* 1997 ND 14, 559 N.W.2d 826 (discussing constitutional limits of     grandparent rights).

night, extended visitation [for Anthony Sposato] with his grandchildren from December 28, 1996 through January 3, 1997," directed him to "be responsible for payment of all expenses associated with the children's travel to and from the State of New York," and directed their mother to "accompany the children to and from New York," with Anthony to pay only her airfare and not "any expenses involved with [her] lodging." This order apparently came too late to adjust necessary plane reservations in that busy holiday season.[2]

[¶ 20] This injunction set a time too short for full adjudication through appellate review before its expiration, and thus this order fits a classic exception to mootness. This was an actual controversy adjudicated by the trial court, it is clearly capable of repetition, and it is reasonably expected to be repeated. Since the trial court chose to compel these children to visit their unfamiliar paternal grandfather and his family in a distant state only during a specific week, the duration of the challenged order was too short to be fully reviewed on appeal before it expired. We should review it.

[¶ 21] "[A]n issue technically moot will not be considered moot if it is capable of repetition yet evading review...." *Bies v. Obregon*, 1997 ND 18, ¶ 10, 558 N.W.2d 855, citing *State v. Liberty Nat'l Bank and Trust Co.*, 427 N.W.2d 307, 309 (N.D.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988). "[T]he 'capable of repetition, yet evading review' doctrine is limited to situations where two elements combine: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation or demonstrated probability that the same complaining party will be subjected to the same action again." 5 AmJur2d *Appellate Review*, § 646 (1995). "'Reasonable expectation' should not be equated with 'demonstrated probability;' rather these standards should be viewed in the disjunctive so that a controversy may be found to be capa-

ble of repetition based on expectations that, while reasonable, are hardly demonstrably probable." *Id. Honig v. Doe*, 484 U.S. 305, 319 n. 6, 108 S.Ct. 592, 602 n. 6, 98 L.Ed.2d 686 (1988)(emphasis original), put it clearly: "Our concern in these cases, as in all others involving potentially moot claims, was whether the controversy was *capable* of repetition and not, as the dissent seems to insist, whether the claimant had demonstrated that a recurrence of the dispute was more probable than not."

[¶ 22] We have used this analysis in other domestic relations cases, rather than a stricter approach more suitable for run-of-the-mill commercial cases that do not involve family status. *See Collins v. Collins*, 495 N.W.2d 293, 296 (N.D.1993)(order denying income withholding not moot "when an obligor quits his job or leaves to evade income withholding for child support" because "this order would improperly impede withholding from his income to enforce support for his child" if obligor returned to North Dakota); *Johnson v. Johnson*, 527 N.W.2d 663, 667 (N.D. 1995)(not moot when "[a]n obligor who refuses to comply with a court order of support ..., forces the obligee to incur the costs of [more] litigation, [through] the obligor's decision, when faced with an order to show cause, to pay the arrearage in an effort to purge the contempt"). In *Johnson, id.*, we agreed "the question is capable of repetition, yet will otherwise evade review, and we conclude that it is not moot." For like reasons, we should *do so in this case.*

[¶ 23] The mere existence of an unreviewed order forcing grandchildren to travel to an unfamiliar grandfather's distant home for visitation is an invitation to do it again. Relitigation of another motion will duplicate legal expense and risk more loss of time from work and additional inconvenience for this single parent of modest means who is pitted against a well-to-do adversary. More importantly, until the scope of forced visitation with their unfamiliar grandfather is judicially defined, these children will face continued

---

2. Anthony represented to us:

Due to the logistical problems created by the necessity to change airline tickets in the short amount of time prior to the scheduled visita-

tion and the holiday season, Anthony Sposato was not able to exercise the planned visitation from December 28, 1996 to January 3, 1997.

uncertainty. *See Jordana v. Corley,* 220 N.W.2d 515, 524 (N.D.1974)("... the status of children should be quickly fixed and, thereafter, little disturbed")(Judge Vogel, concurring specially, quoting *Jacobs v. Jacobs,* 216 N.W.2d 312 (Iowa 1974)); *Mansukhani v. Pailing,* 318 N.W.2d 748, 756 (N.D.1982)(recommending the trial court not entertain any new petition for change of custody or visitation, except for an emergency, "[t]o avoid detrimental consequences to the children resulting from continuous litigation over their custody"). Without review here, the resulting uncertainty cannot be healthy for these children.

[¶ 24] Courts should be very cautious and deferential about interfering with reasonable parental choices or imposing financial costs and time constraints on a parent to enable grandparent visitation. *Peterson v. Peterson,* 1997 ND 14, ¶ 26, 559 N.W.2d 826. Grandparents are often better situated to travel to see their grandchildren where the children live. *Id.* at ¶¶ 27 and 28, 559 N.W.2d 826. Similar considerations should be a part of the mootness analysis to assess the reasonable expectation of repetition. The majority's suggestion that the mother would be entitled, in the event of repetition, "to timely appeal and [to] file for stay under Rule 8, NDRAppP, and Rule 62, NDRCivP," does not dispel concerns about the costs, inconveniences, and uncertainties of repetition for this parent and her children.

[¶ 25] Anthony's brief to this court adds another reason why repetition can be expected:

> Even if this particular appeal is deemed moot, [Anthony] asks the Court to make a determination as the appeal has effectively canceled plans for a summer 1997 visitation. The District Court has refused to hear a motion for summertime visitation pending resolution of this appeal. If this Court does not make a determination, every time the District Court grants a visitation, [Robin] could appeal the decision, effectively blocking it.

Because both sides expect repetition, the expectations are quite reasonable. Because the effects of repetition reinforce the need for review, we should review and decide this case.

[¶ 26] In my opinion, this order for forced grandparent visitation is clearly erroneous when it compels seven and eight-year-olds to travel more than 1,300 miles to visit a virtual stranger, alone and without the protective presence of their responsible parent during the visit. As the majority opinion hints broadly, the trial court, as an afterthought and without examining her position about it on the record, compelled this mother to travel with the children and, at her own expense, to stay separately nearby during the visit.

[¶ 27] The trial court compelled this distant visitation despite important reasons against such an intrusive injunction: (1) the girls barely knew their grandfather, and did not know the other relatives he proposed they meet; (2) Anthony did not ask or consult the girls or their mother about the visitation; (3) the girls had not flown before and were anxious about doing so; and (4) the girls had not slept overnight with anyone other than their maternal grandparents, not even with friends. Robin also questioned the possibility of the girls being left unsupervised with their abusive father during the visit. A therapist, who has counseled the girls for four years for problems resulting from abuse by their father, testified she did not believe it was in the children's best interests to travel across the country to visit complete strangers. Courts should avoid imposing such anxieties, intrusions, and uncertainties on a family unit whenever possible. In my opinion, the trial court's order is both factually and legally erroneous.

[¶ 28] The trial court decided this motion before and without the guidance of our opinion in *Peterson v. Peterson,* 1997 ND 14, 559 N.W.2d 826. The parties here, however, each tried to employ that opinion in their briefs to this court. I believe *Peterson* clearly calls for a reversal here.

[¶ 29] What we said in *Peterson* should prevail upon remand of this case, where the father has lost most of his parental choices for improper parental conduct, and where the mother remains virtually the sole responsible parent. I would paraphrase and apply *Peterson* thus:

In applying NDCC 14–09–05.1 to these circumstances, the court must carefully consider [the mother's] constitutional right[ ] as [these children's responsible] parent[ ] to raise [them] as [she] reasonably see[s] fit. The court ordered [grandparent] visitation[ ] imposed on this family [unit], if any, must not unduly interfere with [her] reasonable parental choices. The lower court must cautiously apply the statute, bearing in mind that a statute must be construed in harmony with the constitution[al right of the responsible parent] to avoid constitutional infirmities.

See Peterson, ¶ 26, 559 N.W.2d 826. Like the mother in Peterson, this mother represented to the trial court, and to this court as well, that she is "not opposed to further grandparent visits in Devils Lake, but [she is] opposed [to a] visitation in the state of New York." Perhaps, through a pattern of visits by the grandfather with these grandchildren in their locale, rather than in his distant, strange, and unfamiliar setting without their mother's protective presence, this grandfather could eventually establish the kind of family relationship and trust that would enable his grandchildren to visit him voluntarily, rather than through the compulsion of a court injunction.

[¶ 30] Because I am convinced this case is not moot and was wrongly decided by the trial court, I respectfully dissent.

[¶ 31] MARING, J., concurs.